IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| Darrell Fair (#B-32994), | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 15 C 4361 |
| v. | ) | |
| | ) | Judge Gary Feinerman |
| Anna McBee, et al., | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff may proceed on his amended complaint. Plaintiff's motion to reconsider his retaliation claim [5] is denied. The Court on its own motion dismisses without prejudice the claims against Lieutenant Kirk and Warden Hardy, as well as Plaintiff's retaliation and failure-to-protect claims, on initial review pursuant to 28 U.S.C. § 1915A. If Plaintiff wishes to proceed with those claims, he must file a second amended complaint by 3/11/2016; if Plaintiff does not file a second amended complaint, the dismissal of those claims will convert automatically to a dismissal with prejudice. The Court directs the Clerk to: (1) file the amended complaint [4]; (2) terminate Anna McBee, Michael Lemke, Billie Greer, and S.A. Godinez as party defendants pursuant to the amended complaint and Fed. R. Civ. P. 15(a), and terminate Lieutenant Kirk and Warden Hardy as party defendants; (3) add Dr. S. Obaisi and Dr. Martija as party defendants; (4) issue summonses for service on Defendants McGarvey, Obaisi, Martija, and Mattison by the U.S. Marshals Service; (5) send Plaintiff a magistrate judge consent form, filing instructions, and a copy of this order; and (6) re-style the case to make Major McGarvey the lead defendant. The Court appoints the U.S. Marshals Service to serve Defendants McGarvey, Obaisi, Martija, and Mattison. Because no defendant has been served, status hearing set for 2/18/2016 [7] is stricken and re-set for 3/30/2016 at 9:20 a.m. This case is referred to Magistrate Judge Mason for discovery supervision and the setting of a discovery and dispositive motion schedule. Defense counsel shall arrange for the telephonic appearance of any incarcerated pro se plaintiff.

## STATEMENT

Plaintiff Darrell Fair, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, correctional officials and health care providers at the Stateville Correctional Center, violated his constitutional rights by failing to protect him from an attack at the hands of a fellow inmate and/or and by acting with deliberate indifference to his serious medical needs.

The 12/8/2015 order dismissed certain claims and granted Plaintiff the opportunity to replead with respect to his claim that he was denied needed medical care. Doc. 3. Plaintiff has submitted an amended complaint, Doc. 4, but he reasserts two of the dismissed claims.

Under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court is required to screen *pro se* prisoners' complaints and dismiss the complaint, or any claims therein, if the Court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoner litigation claims in the same manner as ordinary motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). Courts also construe *pro se* complaints liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam).

Plaintiff alleges the following facts, assumed true for purposes of the Court's initial review: In May 2013, Plaintiff was assigned to Stateville's F-House as a barber. The F-House Unit holds inmates known for being highly aggressive. F-House inmates include those who have assaulted prison employees, been found with weapons, and committed sexual offenses. F-House is also used for inmates in administrative detention while under disciplinary investigation. According to prison regulations, inmates in administrative detention are supposed to be handcuffed when outside of their cell.

On May 14, 2013, an inmate named Howard was in a holding cell outside of F-House complaining to Defendant McGarvey that he did not belong in administrative detention, and warning that nobody had better touch his personal property. McGarvey released Howard from his handcuffs so that he could pack up his property for moving into an administrative detention cell. Defendant Kirk, who was assigned to F-House that day, directed Plaintiff to assist Howard in moving his bags. No security was stationed nearby to monitor the process. As soon as Plaintiff lifted the first bag, Howard started "swinging" at him. Howard landed several blows before Plaintiff managed to subdue him. A minute or so later, one correctional officer grabbed and held Howard, while a second officer restrained Plaintiff. Both inmates were placed in handcuffs and then led away to the shower area. Plaintiff overheard staff members wondering aloud, "Who uncuffed Howard?!" The left side of Plaintiff's face was swollen, his knees were bleeding, and his left shoulder was injured from being tackled by the officer who had intervened in the fight.

2

Once the inmates were separated from each other and placed in the shower room, McGarvey asked Plaintiff whether he was "cool." Plaintiff responded that his head and shoulder hurt, and that his knees needed to be bandaged. McGarvey, however, simply told Plaintiff that he was lucky he was not going to the segregation unit, and that they would "keep this in house." No one called for a medical technician.

Plaintiff asked the staff to contact Defendant Mattison, the barber supervisor, to explain what had happened and to set up a medical appointment. Mattison refused to see Plaintiff and failed to schedule a medical appointment even after Plaintiff wrote him a follow-up letter. A day or two later, after hearing conflicting reports, Plaintiff learned that Defendant Mattison had fired him from his barber job. Plaintiff believes that Mattison was angry that Plaintiff faced no discipline in connection with the fight (or attack, as Plaintiff depicts the encounter).

Plaintiff experienced severe headaches, light sensitivity, nausea to the point of vomiting, and "constant pain" following the scuffle with Howard. The nursing staff directed Plaintiff to submit a medical request slip, and he did so, but he was not seen at the health care unit until about two weeks later. The doctor who examined Plaintiff noted his symptoms and observed the abrasions on his knees. The doctor ordered an x-ray of Plaintiff's head, but Defendant Dr. Obaisi, Stateville's medical director, failed to take any immediate follow-up action. Plaintiff did not see Dr. Obaisi until a couple of months later.

When Plaintiff finally saw Obaisi, the doctor told him that he was "fine." Both Obaisi and Martija prescribed pain medication and ordered x-rays of Plaintiff's shoulder; however, subsequent care was "limited if [not] non-existent." Doc. 4 at 8. Despite symptoms suggesting that Plaintiff might have suffered a concussion, doctors never assessed him for that possibility. Although the headaches have subsided, Plaintiff continues to suffer from blurred vision and dizziness from time to time. In addition, Plaintiff's rotator cuff still causes him constant pain, and he has limited range of motion as well as decreased strength in that arm. Doctors recently discontinued Plaintiff's pain medication and revoked his low bunk permit. Because Plaintiff has an enlarged prostate, he has to climb in and out of his bunk bed six to eight times a night, which exacerbates the pain in his shoulder.

Accepting Plaintiff's factual allegations as true, the amended complaint states a colorable federal cause of action against Defendants McGarvey, Obaisi, Martija, and Mattison for deliberate indifference to Plaintiff's medical needs. In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' … proscribed by the Eighth Amendment." This is true "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care …." *Id.*; *see also Fields v. Smith*, 653 F.3d 550, 554 (7th Cir. 2011). The fact that a prisoner received some medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (emphasis in original), or by "woefully inadequate action," *Cavalieri v.*

3

*Shepherd*, 321 F.3d 616, 624 (7th Cir. 2003).  True, neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference.  *Estelle*, 429 U.S. at 106; *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Greeno*, 414 F.3d at 653. Nevertheless, Plaintiff's allegations of deliberate indifference to his pain and other symptoms state an arguable claim.  Nothing in this order, which is based on preliminary review of the amended complaint, precludes any legal argument that Defendants may advance in response to Plaintiff's allegations.

However, Plaintiff's motion to reconsider the dismissal of his retaliation claim is denied, as he still fails to provide a basis for inferring retaliation.  As noted, in the Court's 12/8/2015 order, "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution."  *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Walker v. Thompson*, 288 F.3d 1005, 1008-1009 (7th Cir. 2002).  In this case, the amended complaint alleges no facts to suggest that Mattison discharged him from being a barber on the basis of retaliatory animus.

Plaintiff's use of the word "retaliation" is insufficient to state a claim.  The Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678).  Here, there is no allegation either that Plaintiff engaged in constitutionally protected activity or that his protected activity was the basis for his discharge.

An *unfair* discharge is not the same as a *retaliatory* discharge.  Plaintiff had no constitutional right to keep his job assignment.  As the Court previously advised Plaintiff, prison inmates have no protected constitutional interest in their prison jobs.  *See Grover v. Helman*, 97-2273, 1999 WL 191503, at *1 (7th Cir. 1999) (citing *Wallace v. Robinson*, 940 F.2d 243, 248 (7th Cir. 1991)); *McMillen v. Tanner*, No. 12 C 5110, 2012 WL 2839808, at *2 (N.D. Ill. Jul. 6, 2012).  "Illinois does not give every prisoner a right to hold a job, or any particular job ....  [N]o statute, regulation, or practice with a force of a regulation curtails the discretion of prison officials to assign a prisoner to any job on whim."  *Wallace*, 940 F.2d at 244-45.  Accordingly, even if Mattison unfairly removed Plaintiff from his job, Plaintiff cannot sue over his wrongful termination in federal court absent a constitutional violation, of which there is none.  Plaintiff's motion to reconsider therefore is denied.

The Court likewise remains satisfied that it properly dismissed Plaintiff's claim that correctional officials violated his constitutional rights by failing to protect him from attack. Correctional officials have a duty to protect inmates from violent assaults by other inmates.  *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 669 (7th Cir. 2012) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).  The Constitution imposes on correctional officials a duty to "take reasonable measures to guarantee the safety of the inmates and to protect them from harm at the hands of others."  *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (quoting *Farmer*, 511

4

U.S. at 832-33). Correctional officials incur liability for the breach of that duty when they are aware of a substantial risk of serious injury to an inmate but nevertheless fail to take appropriate steps to protect him from a known danger. *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007); *Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). In order to state an Eighth Amendment claim, Plaintiff must allege facts showing that: (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) defendants acted with "deliberate indifference" to that risk. *Santiago*, 599 F.3d at 756; *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). The allegations in the amended complaint satisfy neither prong.

The satisfy the objective prong, a plaintiff must demonstrate not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Santiago*, 599 F.3d at 758; *Estate of Miller ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012). "When [Seventh Circuit] cases speak of a 'substantial risk' that makes a failure to take steps against it actionable under the Eighth or Fourteenth Amendment, they also have in mind risks attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals; to 'highly probable' attacks; and to particular detainees who pose a 'heightened risk of assault to the plaintiff.'" *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). This general definition of "substantial risk" includes, of course, "risks so great that they are almost certain to materialize if nothing is done." *Brown*, 398 F.3d at 904; *Washington*, 2012 WL 589031 at *2.

A generalized possibility of jail violence, rather than a specific risk of serious harm, does not implicate the Constitution. *See Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (citations omitted). Not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer*, 511 U.S. at 834; *Miller v. Turner*, 26 Fed. Appx. 560, 563 (7th Cir. 2001). A "mere possibility of violence" or the occurrence of a random act of violence is insufficient to impose liability on prison officials. *Miller*, 26 Fed. Appx. at 563. "[P]risons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more .... All that can be expected is that guards act responsibly under the circumstances that confront them." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). "[A]n unfortunate random act of violence in a prison ... does not impose liability on prison officials." *Washington v. LaPorte County Sheriff's Department*, 306 F.3d 515, 519 (7th Cir. 2002).

In this instance, Plaintiff has failed to show that a serious risk of substantial harm existed. Nothing in the amended complaint suggests that Plaintiff knew his assailant, had experienced conflict with him prior to the attack, or been threatened. It is most regrettable that Plaintiff was the victim of a sudden eruption of random violence by a belligerent fellow inmate at a maximum security facility. But Plaintiff has not suggested that he faced a substantial risk of serious harm prior to the assault.

Even if he satisfied the objective prong, Plaintiff's claim fails under the subjective prong. To satisfy the subjective prong, a plaintiff must show that the defendant acted with deliberate indifference to the substantial risk of serious harm. *Farmer*, 511 U.S. at 838; *Brown*, 398 F.3d at

913. The subjective prong has two subparts: (a) knowledge of the risk, *Brown*, 398 F.3d at 913, and (b) a disregard of that risk, *id.* at 916. Plaintiff must demonstrate that prison officials were aware of a substantial threat to his safety. *Morris v. Ley*, 331 Fed. Appx. 417, 419 (7th Cir. 2009); *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). To be held liable under 42 U.S.C. § 1983, the defendant "must both be aware of the facts from which an inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 838; *see also Brown*, 398 F.3d at 913; *Riccardo*, 375 F.3d at 525. Negligence or even gross negligence is insufficient to implicate the Constitution; for liability to attach under 42 U.S.C. § 1983, the officer must have acted with "the equivalent of criminal recklessness." *Guzman*, 495 F.3d at 857 (quoting *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005)). The relevant inquiry is whether correctional officials actually knew about the danger that the plaintiff faced, not whether a reasonable official should have known. *Case v. Ahitow*, 301 F.3d 605, 605 (7th Cir. 2002) (distinguishing deliberate indifference from negligence).

The amended complaint does not support an inference that Defendants McGarvey and Kirk acted with deliberate indifference to a substantial risk of known harm. Again, there is no indication that Plaintiff expressed any concerns for his safety prior to the attack, which appears to have been entirely sudden and unexpected. Although Howard may have ominously stated that no one had better touch his personal property, that vague warning did not rise to the level of a substantial risk of serious harm. And even if prison rules dictated that Howard be handcuffed during the move, McGarvey's failure to place him in restraints—while certainly no cause for commendation—did not rise to the level of criminal recklessness. Violations of prison regulations, or even state law, are not in and of themselves actionable under 42 U.S.C. § 1983. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir.2006). Consequently, Plaintiff's failure-to-protect claim against Defendants McGarvey and Kirk is dismissed.

In addition, Plaintiff has not articulated a tenable cause of action against Warden Hardy. Plaintiff has alleged no facts suggesting Hardy's direct, personal involvement, as required by *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). Nor has Plaintiff indicated that the alleged violations of his constitutional rights occurred at Hardy's direction or with his knowledge and consent. *Id.* at 833-34. Section 1983 is premised on the wrongdoer's personal responsibility; therefore, an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Because Plaintiff has failed to offer any facts indicating that Hardy was personally involved in, or even aware of, the alleged circumstances giving rise to this lawsuit, Hardy is dismissed as a Defendant in this matter.

In short, Plaintiff may proceed only on his claim that Defendants McGarvey, Mattison, Obaisi, and Martija acted with deliberate indifference to his serious medical needs. The Court summarily dismisses without prejudice all other claims and Defendants on initial review pursuant to 28 U.S.C. § 1915A. Plaintiff will be given one final opportunity to replead the dismissed claims in a second amended complaint. If Plaintiff does not submit a second amended complaint

by 3/11/2016, the dismissal of those claims will convert automatically to a dismissal with prejudice.

The Court directs the Clerk of Court to issue summonses for service of the amended complaint on Defendants McGarvey, Mattison, Obaisi, and Martija. (USM-285 forms already have been returned by Plaintiff. See Docs. 6, 8 and the 1/4/2016 docket entry.) The U.S. Marshals Service is appointed to serve Defendants. The Court instructs the U.S. Marshals Service to make all reasonable efforts to serve Defendants. With respect to any former employee who can no longer be found at the work address provided by Plaintiff, correctional officials and/or Wexford Health Sources must furnish the U.S. Marshals Service with the Defendant's last-known address. Address information will not be maintained in the Court file and will not be otherwise disclosed by the U.S. Marshal, except as necessary to serve Defendants. The U.S. Marshals Service is authorized to send a request for waiver of service to Defendants in the manner prescribed by Federal Rule of Civil Procedure 4(d) before attempting personal service.

Plaintiff is instructed to file all future papers concerning this action with the Clerk of Court in care of the Prisoner Correspondent. In addition, Plaintiff must send an exact copy of any document he files in this Court to Defendants or to defense counsel if an attorney has entered an appearance on behalf of Defendants. Every document submitted by Plaintiff must include a certificate of service stating to whom exact copies were sent and the date of mailing. The Court may strike without considering any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions.

February 12, 2016  _____
United States District Judge